1

2

3

4

5

6

7

8

9

10

11

12

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

LINDA BUCKBEE SELLECK,

           Plaintiff,

      v.

KEITH EVERTS RODE, et al.,

           Defendants.

Case No.  5:13-cv-03055-EJD

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

Re: Dkt. No. 51

13   After losing what she describes as her "entire life savings" to a Ponzi scheme, Plaintiff

14   Linda Buckbee Selleck ("Plaintiff") filed this civil action for professional negligence, fraud and

15   elder abuse against one of the scheme's perpetrators, Defendant Keith Everts Rode ("Rode"), and

16   an accountancy firm, Defendant CliftonLarsonAllen, LLP ("Clifton"), in which Rode was a

17   partner throughout the conduct alleged in the Complaint.  Clifton now moves to dismiss all of

18   Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6).  Dkt. No. 51.

19   Federal jurisdiction arises pursuant to 28 U.S.C. § 1332.  After a careful review of the

20   pleadings in light of the parties' arguments, the court has determined that all but one of Plaintiff's

21   claims should be dismissed.  Accordingly, Clifton's motion will be granted in part and denied in

22   part for the reasons explained below.

23   **I.   BACKGROUND**

24   Clifton is the "eighth largest accountancy firm in the United States."  Compl., Dkt. Nos.

25   1,4 at ¶ 10.  Rode is a certified public accountant.  Id. at ¶ 9.  He was a partner of Clifton and,

26   while there, prepared Plaintiff's tax returns and provided financial advice to her.  Id. at ¶ 14.

27

28

Case No.: 5:13-cv-03055-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Rode was also one of the founders of GLR Growth Fund, LP ("GLR").  Id. at ¶ 16.

2    According to Plaintiff, GLR was a "limited partnership, whose agreement provided that the

3    limited partners, i.e., the people who 'invested' money in the 'partnership,' had no control over

4    [GLR], and no involvement in its management."  Id. at ¶ 17.  Instead, GLR was controlled by its

5    general partner, GLR Capital Management, LLC, through Rode.  Id.

6    In 2003, Plaintiff made two investments in GLR, for a total of $1,470,000.  Id. at ¶¶ 19, 20.

7    This amount represented Plaintiff's entire life savings, the income from which she intended to use

8    in retirement.  Id.  GLR charged Plaintiff a yearly "management fee" of 4% on her investment.  Id.

9    at ¶ 21.

10    Rode prepared Plaintiff's 2004 tax returns while her funds were invested with GLR.  Id. at

11    ¶ 22.  Rode communicated with Plaintiff by using an e-mail address purportedly associated with

12    Clifton.  Id.  Plaintiff alleges that by preparing her tax returns "in what appeared to be the type of

13    professional manner typical of a large accounting firm," Rode and Clifton "implied" to Plaintiff

14    that her investments, particularly the one in GLR, where "in a safe, government-approved

15    investment vehicle."  Id. at ¶ 23.  She also alleges that the involvement of Rode and Clifton

16    "presented a veneer of respectability to 'investors'" like Plaintiff.  Id. at ¶ 25.

17    It was later revealed, however, that GLR was a Ponzi scheme.  Id. at ¶ 18.  As such, the

18    funds from new GLR investors were used to pay back earlier investors, and "millions were

19    diverted to other persons or entities."  Id.  Plaintiff alleges that Rode and Clifton furthered the

20    GLR scheme by creating false tax forms for Plaintiff to file.  Id. at ¶ 24.  In addition, Plaintiff

21    alleges that Rode and Clifton provided Plaintiff with false account statements from 2003 through

22    2011, and false year-end summaries for those years, "all of which had printed on them 'NASD and

23    SEC Approved,'" when in reality neither of those agencies had approved GLR.  Id. at ¶ 26.

24    Plaintiff was unaware of irregularities with her investment until April 2, 2012, when John

25    Geringer, another GLR partner, sent her a letter informing her of a government investigation.  Id.

26    at ¶ 28.  Plaintiff received a subsequent letter from Geringer on June 4, 2012, in which he admitted

27

28    Case No.: 5:13-cv-03055-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
DISMISS

1    that GLR was a Ponzi scheme and was "unwinding its assets." Id.  Had she known the truth about

2    GLR, Plaintiff would not have invested in the scheme and would not have relied on Rode and

3    Clifton to prepare her tax returns.  Id. at ¶ 27.

4         Plaintiff initiated this case on July 2, 2013.  She asserts eight claims against Rode and

5    Clifton under California law: (1) professional negligence, (2) breach of fiduciary duty, (3)

6    intentional misrepresentation, (4) negligent misrepresentation, (5) suppression of facts, (6)

7    promises without intention to perform, (7) violation of the Consumer Legal Remedies Act

8    ("CLRA"), California Civil Code § 1750 et seq., and (8) elder abuse.  The instant renewed motion

9    to dismiss was filed upon the dissolution of a stay imposed during the pendency of related

10   criminal proceedings.

11   **II.   LEGAL STANDARD**

12        Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient

13   specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which

14   it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted).  A

15   complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim

16   upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  "Dismissal under Rule 12(b)(6) is

17   appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support

18   a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th

19   Cir. 2008).  Moreover, the factual allegations "must be enough to raise a right to relief above the

20   speculative level" such that the claim "is plausible on its face." Twombly, 550 U.S. at 556-57.

21        Claims that sound in fraud are subject to a heightened pleading standard. Fed. R. Civ.

22   Proc. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances

23   constituting fraud or mistake."); Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th Cir. 2007) ("Rule

24   9(b) imposes heightened pleading requirements where 'the object of the conspiracy is

25   fraudulent.'").  The allegations must be "specific enough to give defendants notice of the

26   particular misconduct which is alleged to constitute the fraud charged so that they can defend

27

28   Case No.: 5:13-cv-03055-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
     DISMISS

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1  against the charge and not just deny that they have done anything wrong." Semegen v. Weidner,

2  780 F.2d 727, 731 (9th Cir. 1985).  This generally requires "an account of the time, place, and

3  specific content of the false representations as well as the identities of the parties to the

4  misrepresentations." Swartz, 476 F.3d at 764.  In other words, fraud or claims asserting fraudulent

5  conduct must generally contain more specific facts than is necessary to support other causes of

6  action.

7  When deciding whether to grant a motion to dismiss, the court generally "may not consider

8  any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d

9  1542, 1555 n. 19 (9th Cir. 1990).  However, the court may consider material submitted as part of

10  the complaint or relied upon in the complaint, and may also consider material subject to judicial

11  notice.  See Lee v. City of Los Angeles, 250 F.3d 668, 688-69 (9th Cir. 2001).

12  In addition, the court must generally accept as true all "well-pleaded factual allegations."

13  Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009).  The court must also construe the alleged facts in the

14  light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988).

15  However, "courts are not bound to accept as true a legal conclusion couched as a factual

16  allegation." Iqbal, 556 U.S. at 678.

17  **III.    DISCUSSION**

18  **A.    Documents Submitted with the Motion to Dismiss**

19  Clifton has a submitted a series of documents in conjunction with its motion.  These

20  documents include select portions of Plaintiff's K-1 forms for the years 2003 through 2011, and a

21  cover letter addressed to Plaintiff from Rode which apparently accompanied the K-1 forms.  See

22  Decl. of Thomas J. Shroyer, Dkt. No. 52.  Clifton believes the court should consider these

23  documents because Plaintiff "necessarily relies" on them in the Complaint.

24  On a motion to dismiss under Rule 12(b)(6), the court may consider "unattached evidence

25  on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the

26  document is central to the plaintiff's claim; and (3) no party questions the authenticity of the

27

4

28  Case No.: 5:13-cv-03055-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

1   document." United States ex rel. Lee v. Corinthian Colleges, 655 F.3d 984, 999 (9th Cir. 2011).

2   However, the court cannot notice "facts that may be 'subject to reasonable dispute.'" Id. (quoting

3   Lee, 250 F.3d at 689). "More specifically, [the court] may not, on the basis of evidence outside of

4   the Complaint, take judicial notice of facts favorable to Defendants that could reasonably be

5   disputed." Id.

6        Here, the court does not find it appropriate to consider either the K-1 forms or the cover

7   letter. The latter document is neither referenced in nor relied upon in the Complaint, and Clifton

8   does not convincingly argue otherwise. As to the K-1 forms, while they are referenced by Plaintiff

9   in the Complaint, the court cannot consider these documents to prove the "fact" for which Clifton

10  has submitted them: that Rode prepared those documents as a director of GLR rather than as a

11  Clifton partner. That contention is subject to a reasonable dispute, and the court is unable to

12  resolve the issue through a motion that requires it to "accept as true all factual allegations in the

13  complaint and draw all reasonable inferences in favor of" Plaintiff. Retail Prop. Trust v. United

14  Bhd. of Carpenters & Joiners of Am., 768 F.3d 938, 945 (9th Cir. 2014). Accordingly, the success

15  of this motion will turn primarily on the completeness or incompleteness of the factual allegations

16  in the Complaint.

17      **B.    Claim 1: Professional Negligence**

18       In California, accountants are part of a "skilled professional class" and are subject "to the

19  same rules of liability for negligence in the practice of their profession as are members of other

20  skilled professions." Lindner v. Barlow, Davis & Wood, 210 Cal. App. 2d 660, 665 (1962)

21  (internal quotations omitted). They are, in essence, experts. Id. Accordingly, accountants have a

22  duty to their clients "to exercise the ordinary skill and competence of members of their profession,

23  and a failure to discharge that duty will subject them to liability for negligence." Gagne v.

24  Bertran, 43 Cal. 2d 481, 489 (1954).

25      "The elements of a cause of action for professional negligence are (1) the existence of the

26  duty of the professional to use such skill, prudence, and diligence as other members of the

27

5

28  Case No.: 5:13-cv-03055-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
DISMISS

United States District Court
Northern District of California

1    profession commonly possess and exercise; (2) breach of that duty; (3) a causal connection

2    between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting

3    from the professional negligence." Oasis West Realty, LLC v. Goldman, 51 Cal. 4th 811, 821

4    (2011).

5          Clifton's challenges the professional negligence claim on three grounds.  First, Clifton

6    argues Plaintiff cannot establish that Clifton provided the services on which Plaintiff bases her

7    claim.  Second, Clifton contends that, assuming Plaintiff has successfully alleged that Clifton is

8    vicariously liable, she has nonetheless attempted to impose additional duties outside of those owed

9    by a tax preparer.  Third, Clifton argues this claim fails as to the K-1 forms because "Rode

10   obviously issued those forms as one of the managing members of GLR" and because the receipt of

11   such form does not create an accountant-client relationship.

### i.    Whether Clifton Provided Services to Plaintiff

13         Clifton argues the allegations in the Complaint do not establish that it, as opposed to Rode,

14   provided the tax preparation services on which Plaintiff bases the claim.  Stated another way,

15   Clifton contends that Plaintiff was not a client of the firm to whom it owed a duty.

16         California Business and Professions Code § 5035.2 defines an accountant's "client" as

17   "any person for whom public accountancy services are performed or to whom financial products,

18   financial services, or securities are sold or provided at the licensee's public accountancy practice

19   or through referral to any other location or business in which the certified public accountant has a

20   material interest."  "[T]he finding of an accountant-client relationship must be founded upon an

21   agreement which, if not expressed, must at least be implied in fact." Richard B. LeVine, Inc. v.

22   Higashi, 131 Cal. App. 4th 566, 584 (2005).

23         Here, Plaintiff does not allege the existence of an express agreement between herself and

24   Clifton for accountancy services.  In addition, she does not plausibly allege that anyone at Clifton,

25   other than Rode, provided her with any type of service.[1]  Instead, Plaintiff relies on her direct

26

27   [1] Plaintiff does imply that the "Accountant Defendants," which she defines as both Rode and

6

28   Case No.: 5:13-cv-03055-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
DISMISS

United States District Court
Northern District of California

1    relationship with Rode to impart liability on Clifton. To that end, she alleges that Rode's "course

2    of conduct" led her to believe that she was Clifton's client because he communicated with her

3    using a firm email address and "engag[ed] in other communications" indicating that Rode was not

4    acting as an individual "but as an accountant who was part of a large accounting firm." Compl., at

5    ¶ 31.

6          In order to assert an implied-in-fact professional negligence claim against Clifton for the

7    acts of Rode, the Complaint must establish a basis for vicarious liability. Such a theory must be

8    pled with more than just conclusions to be plausible. See Biggins v. Wells Fargo & Co., 266

9    F.R.D. 399, 414 (N.D. Cal. 2009) (finding the allegation that one defendant is the "agent,

10   subsidiary, parent, joint venturer or predecessor" of another is insufficient to state a claim based

11   on vicarious liability); see also Imageline, Inc. v. CafePress.com. Inc., No. CV 10-9794 PSG

12   (MANx), 2011 U.S. Dist. LEXIS 39828, at *12-13, 2011 WL 1322525 (C.D. Cal. Apr. 6, 2011)

13   (holding that allegations "that each defendant was the 'agent, partner, servant, supervisor,

14   employee, successor and/or joint venturer of each of the remaining defendants and was at all time .

15   . . acting within the course and scope, and purpose of said agency, employment, business

16   enterprise and joint venture,' . . . are nothing more than legal conclusions of the type prohibited by

17   Iqbal and Twombly.").

18         The allegations in the Complaint are insufficient vicariously impute Rode's conduct to

19   Clifton on an agency theory. To the extent Plaintiff relies on an ostensible agency, she has not

20   pled what is necessary to raise the doctrine. "An agency is ostensible when the principal

21   intentionally, or by want of ordinary care, causes a third person to believe another to be his agent

22   who is not really employed by him." Cal. Civ. Code § 2300. Ostensible agency has three

23   _____

24   Clifton, prepared her tax documents. See, e.g., Compl., at ¶ 23 ("By preparing [Plaintiff's] tax
     returns in what appeared to be the type of professional manner typical of a large accounting firm,
25   the Accountant Defendants' actions implied to [Plaintiff] that her 'investments' were in a safe,
     government-approved investment vehicle."); ¶ 33 ("Accountant Defendants prepared [Plaintiff's]
26   Federal and State tax returns for every year from 2004 through 2011."). That implication,
     however, is merely a conclusion without facts describing how Clifton actually prepared the
27   returns.

     7

28   Case No.: 5:13-cv-03055-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
     DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1   elements: (1) "[t]he person dealing with an agent must do so with a reasonable belief in the agent's

2   authority," (2) "such belief must be generated by some act or neglect by the principal sought to be

3   charged," and (3) "the person relying on the agent's apparent authority must not be negligent in

4   holding that belief." J.L. v. Children's Inst., Inc., 177 Cal. App. 4th 388, 403-404 (2009).

5   Because the doctrine is based on the principles of estoppel, it "cannot be established by the

6   representations or conduct of the purported agent; the statements or acts of the principal must be

7   such as to cause the belief the agency exists." Id. at 404.

8          With this authority in mind, missing from the Complaint is what *Clifton* did to make

9   Plaintiff believe that Rode was acting as its agent, as opposed to what Rode did to create that

10  impression.  The fact that Rode used a Clifton email address, mailed her documents from Clifton's

11  business address, or engaged in other unspecified communications with Plaintiff are not actions

12  taken by Clifton and cannot insinuate an ostensible agency.  See Murphy v. Fullbright, No. 12-cv-

13  885-JM (WVG), 2012 U.S. Dist. LEXIS 144081, at *12-13, 2012 WL 4754730 (S.D. Cal. Oct. 4,

14  2012) (holding that a real estate broker's use her firm's email address and office to discuss the

15  rental of the broker's own property with a potential tenant was "at best only consistent with the

16  possibility" that the broker was acting as the firm's agent in the absence of allegations describing

17  conduct on the part of the firm).

18         Moreover, Plaintiff's argument that Clifton may have negligently represented to her that

19  Rode was its agent is irrelevant at this point.  Though she surmises in her opposition to this motion

20  to that Clifton did not have policies and procedures in place to prevent a partner from using firm

21  equipment and firm addresses, email or otherwise, she did not include these facts in the

22  Complaint.  See Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In

23  determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint

24  to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to

25  dismiss.").  In sum, Plaintiff failed to identify "the statements or acts of the principal," as opposed

26  to those of the agent, which led her to believe that Rode was acting as Clifton's agent in his

27

28  Case No.: 5:13-cv-03055-EJD
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
    DISMISS

1      dealings with her.  The cases cited by Plaintiff, at least those on the topic of ostensible authority,

2      are in accord with the conclusion that she has not adequately alleged an agency.  See Walsh v.

3      Hooker & Fay, 212 Cal. App. 2d 450 (1963) (holding that an employer, as the principal, is liable

4      for acts of an employee undertaken in the scope of employment); see also Young v. Horizon West,

5      Inc., 220 Cal. App. 4th 1122, 1132 (2013) ("[O]stensible authority cannot be created merely by a

6      purported agent's representation.").

7              That does not end the matter, however, because Plaintiff alternatively argues her

8      allegations are sufficient to impose liability on Clifton under the law of partnerships.  In the

9      Complaint, Plaintiff alleges that Clifton provided her with "accountancy services" when it

10     prepared or reviewed K-1 forms for filing with her federal and state tax returns, and provided her

11     advice with regard to the filing of K-1 forms.  Aside from these allegations, Plaintiff argues that

12     "nothing more is required" for Clifton to be held liable for Rode's actions because Rode, as a

13     Clifton partner performing services for Plaintiff, "made his partnership liable for his actions since

14     actions were within the same type of business" that Clifton provides.

15             As Clifton points out in response, whether or not Rode was providing services to Plaintiff

16     "within the same type of business" as Clifton is not the standard by which partnership liability is

17     examined.  But Plaintiff has nonetheless alleged enough facts to satisfy the standard that does

18     apply.  Under Minnesota law,[2] "[a] partnership is liable for loss or injury caused to a person, or for

19     a penalty incurred, as a result of a wrongful act or omission, or other actionable conduct, of a

20     partner *acting in the ordinary course of business of the partnership* or with authority of the

21     partnership."  Minn. Stat. § 323A.0305 (emphasis added).  According to the Complaint, the

22

23     ──────────────
       [2] Since Plaintiff alleges that Clifton is a Minnesota partnership, the court applies the law of that
24     state for the purposes of this analysis.  See Cal. Corp. Code § 16958 ("The laws of the jurisdiction
       under which a foreign limited liability partnership is organized shall govern its organization and
25     internal affairs and the liability and authority of its partners . . . .").  California law is the same, in
       any event.  See Cal. Corp. Code § 16305 ("A partnership is liable for loss or injury caused to a
26     person, or for a penalty incurred, as a result of a wrongful act or omission, or other actionable
       conduct, of a partner acting in the ordinary course of business of the partnership or with authority
27     of the partnership.").

28     Case No.: 5:13-cv-03055-EJD
       ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
       DISMISS

ordinary course of Clifton's business is to provide those services encompassed by Business and

Profession Code § 5051(d), specifically:

> Prepar[ing] or certif[ying] for clients reports on audits or examinations of books or records of account, balance sheets, and other financial, accounting and related schedules, exhibits, statements, or reports that are to be used for publication, for the purpose of obtaining credit, for filing with a court of law or with any governmental agency, or for any other purpose.

Contrary to Clifton's own interpretation of this provision, § 5051(d) could encompass the

preparation of federal and state tax returns and related schedules.  Referenced in the provision is

the preparation or certification of "reports . . . for filing with a court of law with any governmental

agency, or for any other purpose."  Since tax returns and K-1 forms are prepared for filing with a

governmental agency and is the exact conduct that Plaintiff attributes to Rode in the Complaint,

the court finds Plaintiff has plausibly alleged a potential basis to impose liability on Clifton under

partnership law.

### ii.    Whether Plaintiff Seeks to Impose Additional Duties

Plaintiff alleges in the Complaint that "as part of the process of providing tax filing forms,

preparing [Plaintiff's] tax returns, and advice to [Plaintiff]," Clifton failed to conduct "any due

diligence relating to the GLR Ponzi Scheme, including but not limited to performing any audits or

examinations of books or records of account, balance sheets, and other financial, accounting and

related schedules, exhibits, statements or reports of the GLR Ponzi Scheme."  Compl., at ¶ 36.

In light of this allegation, Clifton argues that Plaintiff's negligence claim should be

dismissed because it assumes duties that a tax preparer does not have.  In particular, Clifton

believes that Plaintiff cannot rely on the receipt of tax-related services from Rode to claim a

breach of the investigatory duties associated with an accountant because a tax preparer's

professional standards permit reliance on information submitted by third-parties.  Stated

differently, Clifton asserts that tax preparers have not duty to inquire into the truthfulness of the

information used to prepare returns.

This argument is unpersuasive because it is based on a restrictive reading of the Complaint.

10

Case No.: 5:13-cv-03055-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
DISMISS

1    Here, Plaintiff does not allege she became Clifton's client solely for the preparation of tax returns

2    or that Clifton was just her tax preparer; to the contrary, Plaintiff alleges she was a "client" of

3    Clifton's "accountancy partnerships" under California Business and Professions Code § 5035.2.

4    Compl., at ¶¶ 30, 31.  Based on these statements and construing the allegations in the light most

5    favorable to Plaintiff, the court disagrees with Clifton that the nature of the parties' relationship

6    should be governed solely by the active conduct cited in the pleading when Plaintiff directly

7    alleges that the scope of her relationship with Clifton was something broader.  Discovery may

8    prove otherwise, but at this stage the court must accept Plaintiff's allegations as true.

9    Accordingly, Clifton's argument on this issue is rejected.

10                  **iii.    The K-1 Forms**

11          Clifton finally argues the professional negligence claim must be dismissed to the extent it

12   is based on Rode's preparation of K-1 forms because, according to Clifton, it is "obvious" that

13   Rode prepared those a manager of GLR and not as a Clifton partner.  It also argues that Plaintiff

14   cannot assert a professional negligence claim based on allegedly inaccurate K-1 forms.

15          These arguments are ineffective as reasons for dismissal.  The first is unsupportable

16   because it relies on the cover letter that, as noted above, is not properly considered for this motion.

17   It also relies on an inference about the role Rode occupied when preparing the K-1 forms which

18   the court cannot accept at this time.  As already noted, whether Rode was acting a GLR director or

19   a Clifton partner with respect to Plaintiff is a reasonably disputed fact incapable of resolution on a

20   motion to dismiss.

21           Second, while it may be correct that the provision of a K-1 form is not sufficient to create

22   an accountant-client relationship (Richard B. LeVine, 131 Cal. App. 4th at 584), Plaintiff alleges

23   that Rode did more for her than simply provide her with that form.

24          Because all of Clifton's arguments are rejected, the motion to dismiss will be denied as the

25   claim for professional negligence.

26

27
                                                11
28   Case No.: 5:13-cv-03055-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
     DISMISS

United States District Court
Northern District of California

### C.    Claim 2: Breach of Fiduciary Duty

Plaintiff alleges that a confidential relationship existed between her and Rode that, by virtue of Rode's partnership in the firm, translated into a similar relationship with Clifton. Compl., at ¶ 45.  According to Plaintiff, this duty required Rode and Clifton to "make a full disclosure of material facts" that might affect her decision-making, and to "use reasonable care, skill, and diligence" in undertaking their duties as Plaintiff's financial advisors and accountants. Id. at ¶¶ 46, 47.  She claims Rode and Clifton breached their duties by "repeatedly representing . . . the viability of the GLR Ponzi scheme, and filing false tax returns for 2004 through 2011." Id. at ¶ 48.

"The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach." Meister v. Mensinger, 230 Cal. App. 4th 381, 395 (2014).  When, as here, a breach of fiduciary duty claim is grounded in fraud, it must be pled according to Rule 9(b). See Concha v. London, 62 F.3d 1493, 1502 (9th Cir. 1995).

For one to be properly charged with a fiduciary obligation, he or she "'must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law.'" City of Hope Nat'l Med. Ctr. v. Genentech, Inc., 43 Cal. 4th 375, 386 (2008) (quoting Comm. on Children's Television, Inc. v. Gen. Foods Corp., 35 Cal.3d 197, 221 (1983)).  "Fiduciary duties are imposed by law in certain technical, legal relationships such as those between partners or joint venturers, husbands and wives, guardians and wards, trustees and beneficiaries, principals and agents, and attorneys and clients." GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 416 (2000), overruled on other grounds, Reeves v. Hanlon, 33 Cal. 4th 1140 (2004).

Confidential relationships, on the other hand, "do not fall into well-defined categories of law and depend heavily on the circumstances." Richelle L. v. Roman Catholic Archbishop of S.F., 106 Cal. App. 4th 257, 272 (2003).  Consequently, "they are more difficult to identify than fiduciary relations." Id.  They "may be founded on a moral, social, domestic, or merely personal

12

Case No.: 5:13-cv-03055-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1   relationship as well as on a legal relationship." Id. at 271.   "The essence of a fiduciary or

2   confidential relationship is that the parties do not deal on equal terms, because the person in whom

3   trust and confidence is reposed and who accepts that trust and confidence is in a superior position

4   to exert unique influence over the dependent party." Barbara A. v. John G., 145 Cal. App. 3d 369,

5   383 (1983).

6          Here, Plaintiff argues that her relationship with Rode and Clifton was fiduciary as a matter

7   of law because she alleges the existence of an accountant-client relationship.  But Plaintiff has not

8   cited, and this court has not located, existing California authority confirming that the accountant-

9   client relationship is categorically considered to be a fiduciary one.  Plaintiff's reliance on Wolf v.

10  Superior Court, 107 Cal. App. 4th 25 (2003), for that premise is misplaced.  To be sure, the facts

11  of Wolf - which involve the breach of a royalty agreement between a movie production company

12  and an author - are entirely distinguishable.  Also distinct is the Wolf court's discussion of

13  fiduciary duty, the relevant portion of which arises not in the context of the accountant-client

14  relationship but in the context of a claim for accounting.  Furthermore, the Wolf dissent's

15  statement that "[a]ccountants, like lawyers, owe a fiduciary duty to their clients" is supported only

16  with a citation to the portion of Witkin's Summary of California Law which addresses an

17  accountant's liability for another tort, negligence, and not for breach of fiduciary duty.  See

18  Stanley v. Richmond, 35 Cal. App. 4th 1070, 1086 (1995) ("[A] breach of fiduciary duty is a

19  species of tort distinct from a cause of action for professional negligence.").  As such, the court

20  does not accept Wolf as authoritative on the fiduciary nature of the accountant-client relationship

21  in California.[3]  At least one other jurisdiction to have examined the issue has declined to find that

22

23  [3] The other cases cited by Plaintiff - none of which explicitly hold that that an accountant is always
    considered a fiduciary for his or her client - are distinguishable or unpersuasive on this topic.  The
24  order of the bankruptcy court in In re Nguyen, No. 11-60906-ASW, 2013 WL 2149420 (N.D. Cal.
    Bankr. May 15, 2013), relies solely on Wolf, which, as stated, does not constitute persuasive
25  authority.  The district court in Hsu v. Leaseway Transportation Corp., No. C-82-4998-MHP, 1985
    WL 1852, (N.D. Cal. Mar. 29, 1985), cites to Lindner v. Barlow, Davis & Wood, but as discussed
26  above, that case stands for an accountant's liability for negligence, not breach of fiduciary duty.
    The accountant defendant in Electronic Equipment Express, Inc. v. Donald H. Seiler & Co., 122
27  Cal. App. 3d 834 (1981), was hired by the plaintiff to prepare monthly financial statements and an

                                                        13
28  Case No.: 5:13-cv-03055-EJD
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
    DISMISS

1    the accountant-client relationship is categorically a fiduciary one.  See, e.g., Friedman v.

2    Anderson, 803 N.Y.S.2d 514, 516 (N.Y. App. Div. 2005) ("Generally, there is no fiduciary

3    relationship between an accountant and his client.").

4         Thus, Plaintiff must plead a confidential relationship to sustain this claim.  She has not

5    done so in a manner that satisfies Rule 9(b) because Plaintiff does not explain how and why her

6    relationship with Rode and Clifton was something more or different than simply that of accountant

7    and client.  Plaintiff merely alleges in a conclusory manner that she entrusted Rode and Clifton to

8    "fulfill their legal duties as financial advisors and accountants."  Compl., at ¶ 45.  But as described

9    above, a confidential relationship requires more than just one party placing trust in another

10   because of the latter's superior knowledge or expertise in a specific area.  City of Hope, 43 Cal.

11   4th at 389 ("It is not at all unusual for a party to enter into a contract for the very purpose of

12   obtaining the superior knowledge or expertise of the other party.  Standing alone, that

13   circumstance would not necessarily create fiduciary obligations, which generally come into play

14   when one party's vulnerability is so substantial as to give rise to equitable concerns underlying the

15   protection afforded by the law governing fiduciaries.").

16        Absent more specific facts establishing the basis for a confidential relationship, Plaintiff

17   has not stated a plausible claim for breach of fiduciary duty against Clifton.  That claim will be

18   dismissed with leave to amend.

19        **D.    Claims 3 through 6: Fraud-Based Claims**

20        Plaintiff's third through sixth claims are for different species of fraud.  Clifton argues these

21   claims cannot withstand a challenge under Rule 9(b) because Plaintiff did not specify each

22   participant's role in the alleged fraudulent conduct.  The court agrees that Plaintiff's claims are

23   deficient in that way.

24        The purpose of the Rule 9(b) pleading standard is "to ensure that adequate notice is

25

26   _____

27   audit report.  As was the defendant in Bedolla v. Logan & Frazer, 52 Cal. App. 3d 118 (1975).
     Those facts are not alleged here.

14

28   Case No.: 5:13-cv-03055-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
     DISMISS

*United States District Court*
*Northern District of California*

1    provided to the parties accused of fraudulent conduct in order to allow for a meaningful defense."

2    Prime Media Grp. LLC v. Acer Am. Corp., No. 5:12-cv-05020 EJD, 2013 U.S. Dist. LEXIS

3    22437, at *8, 2013 WL 621529 (N.D. Cal. Feb. 19, 2013).  "Without such specificity, defendants

4    in these cases would be put to an unfair disadvantage, since at the early stages of the proceedings

5    they could do no more than generally deny any wrongdoing."  Concha, 62 F.3d at 1502.  "Specific

6    allegations that result in a targeted response benefit all parties involved; everyone gets to move

7    forward on an equal footing with little left to speculate."  Prime Media Grp., 2013 U.S. Dist.

8    LEXIS 22437, at *8.

9           In some respects, Rule 9(b)'s heightened pleading requirement also acts to bar the assertion

10   of weak or unfounded - and potentially costly - claims of fraudulent conduct.  See Bly-Magee v.

11   California, 236 F.3d 1014, 1018 (9th Cir.2001).  Indeed, "[b]y requiring the plaintiff to allege the

12   who, what, where, and when of the alleged fraud, the rule requires the plaintiff to conduct a

13   precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and

14   supported, rather than defamatory and extortionate."  Ackerman v. Nw. Mut. Life Ins. Co., 172

15   F.3d 467, 469 (7th Cir.1969).

16          It is therefore unsurprising that, when Rule 9(b) must be satisfied, "everyone did

17   everything" allegations are not permitted.  See Destfino v. Reiswig, 630 F.3d 952, 958 (9th Cir.

18   2011).  "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a

19   minimum, 'identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme.'"  Id.

20   (quoting Moore v. Kayport Package Express, Inc., 885 F.2d 531, 541 (9th Cir. 1989)).

21          Under this authority, the pleading method utilized by Plaintiff in the Complaint does not

22   comport with Rule 9(b).  Plaintiff refers to both Rode and Clifton as the "Accounting Defendants,"

23   as if they are the same.  But her other allegations establish that Rode and Clifton are not the same.

24   To that end, Plaintiff alleges that Rode was simultaneously a GLR manager as well as a Clifton

25   partner.  Plaintiff also indicates that she interacted exclusively with Rode, that he prepared her tax

26   returns and K-1 forms, and that he communicated with her regarding her finances.  Under these

27

28   Case No.: 5:13-cv-03055-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
     DISMISS

United States District Court
Northern District of California

1    circumstances, Rule 9(b) requires that Plaintiff specifically allege just that, and in the context of

2    fraudulent misrepresentations or omissions, she must state who is responsible for making the

3    misrepresentation or omission, when and how it was made, what is false or misleading about the

4    conduct, and why any particular statement was false.  See Vess v. Ciba-Geigy Corp. USA, 317

5    F.3d 1097, 1106 (9th Cir. 2003).  In its current state, the Complaint does not adequately provide

6    these details.

7           Plaintiff argues she should be excused from separately specifying the roles of Rode and

8    Clifton because, legally speaking, she contends that Clifton, as a partnership, is responsible for the

9    conduct of its individual partners.  The court rejects this argument.  Plaintiff cites no authority for

10   this proposition in the context of Rule 9(b), and the court does not see why Clifton should receive

11   less notice about its alleged participation in fraudulent conduct simply because Plaintiff asserts

12   joint and several or vicarious liability.  Moreover, discernment between the acts of Rode and

13   Clifton is particularly important for this case since Plaintiff alleges that Rode occupied a dual

14   position, one with GLR and one with Clifton.

15          Plaintiff also suggests in her opposition that "pleading fraud is relaxed in circumstances

16   where matters are within the opposing party's knowledge."  See Fed. R. Civ. P. 9(b) ("Malice,

17   intent, knowledge, and other conditions of a person's mind may be alleged generally.").  That may

18   be true, but the rule does not assist Plaintiff with her fraud claims.  Here, Plaintiff cites to certain

19   categories of fraudulent statements and omissions as a basis for these claims.  Compl., at ¶ 54.

20   Since the statements and omissions were allegedly made or directed to Plaintiff, Plaintiff is

21   certainly capable of providing the "'the who, what, when, where, and how' of the misconduct

22   charged."  Vess, 317 F.3d at 1106 (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)).

23   There is nothing about alleged misconduct that is peculiar to the knowledge of Rode or Clifton.

24          Furthermore, at least one of the fraud claims is missing facts establishing a requisite

25   element.  Plaintiff's sixth claim is for "promises without intention to perform" in violation of

26   California Civil Code §§ 1572(4) and 1710(4).  Such a claim for promissory fraud "requires proof

27

28   Case No.: 5:13-cv-03055-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
     DISMISS

United States District Court
Northern District of California

16

1    that the defendant made a misrepresentation of fact or a promise without any intention of

2    performing it." Serv. by Medallion, Inc. v. Clorox Co., 44 Cal. App. 4th 1807, 1816 (1996).

3    Plaintiff alleges that Rode and Clifton made "promises set forth in the incorporated allegations."

4    Compl., at ¶ 83.  The "incorporated allegations" from paragraphs 54 through 60 of the Complaint,

5    however, do not contain a promise by Rode or Clifton to do something.

6        For these reasons, the third, fourth, fifth and sixth claims, all of which are rooted in fraud,

7    will be dismissed with leave to amend.

8        **E.    Claim 7: CLRA**

9        The CLRA makes unlawful "unfair methods of competition and unfair or deceptive acts or

10   practices." Cal. Civ. Code § 1770(a); In re Actimmune Marketing Litig., No. C 08-02376 MHP,

11   2009 U.S. Dist. LEXIS 103408, at *47, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009).  As relevant

12   here, the CLRA prohibits a person from "[r]epresenting that goods or services are of a particular

13   standard, quality, or grade . . . if they are of another." Cal. Civ. Code §§ 1770(a)(7).  The plaintiff

14   to a CLRA claim must be a consumer, or "an individual who seeks or acquires, by purchase or

15   lease, any goods or services for personal, family, or household purposes." Cal. Civ. Code §

16   1761(d).

17       Plaintiff alleges that Rode and Clifton violated the CLRA, and in particular § 1770(a)(7),

18   by misrepresenting that her tax returns from 2004 through 2011 were true and correct.  Compl., at

19   ¶ 94.  But with respect to the returns, Plaintiff has not alleged that she qualifies as a "consumer"

20   under § 1761(d).  Within the CLRA claim itself, Plaintiff does not state that she actually paid for

21   the preparation of the returns, and the allegation she believes satisfies this requirement is

22   insufficient for that purpose; Paragraph 75 only states that Rode and Clifton made certain

23   representations to induce Plaintiff to pay for preparation of the returns, not that she actually made

24   any payment to either of them.

25       Moreover, Plaintiff has not stated facts that support the other claimed CLRA violation as to

26   Clifton.  See Cal. Civ. Code § 1770(a)(3) (providing that "misrepresenting the affiliation,

27

28   Case No.: 5:13-cv-03055-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
     DISMISS

17

United States District Court
Northern District of California

1    connection, or association with, or certification by, another" can violate the CLRA).  It is not

2    alleged that Rode's use of his Clifton email caused damage to Plaintiff, and, even if it did, Plaintiff

3    did not plausibly explain in the Complaint how this conduct caused a form of damages recognized

4    by the CLRA.

5          In addition, Plaintiff has included within her CLRA claim language that does not exist in

6    the statute's definition of unlawful practices ("engaging in illegal transactions").  If, as her

7    opposition suggests, Plaintiff is attempting to incorporate other subdivisions of § 1770(a) into her

8    pleading, she can certainly do so without leaving Clifton and the court guessing as to which

9    sections she intends to invoke.

10         Thus, the CLRA claim will be dismissed with leave to amend.

11         **F.    Claim 8: Elder Abuse**

12         California Welfare and Institutions Code § 15610.30 prohibits financial abuse of an elder.

13   A defendant violates this statute if the defendant, either by himself or with the assistance of

14   another, takes, secretes, appropriates, obtains, or retains real or personal property of an elder for a

15   wrongful use, with intent to defraud, or by undue influence.  Cal. Welfare & Inst. Code §

16   15610.30(a).  An "elder" is defined as any person residing in California who is age 65 or older.

17   Cal. Welfare & Inst. Code § 15610.27.  The plaintiff must have been an "elder" at the time of the

18   violation in order to state a claim for financial elder abuse.  See Bonfigli v. Strachan, 192 Cal.

19   App. 4th 1302, 1316 (2011); see also Jackson v. Ocwen Loan Servicing, LLC, No. 2:10-cv-00711-

20   MCE-GGH, 2011 U.S. Dist. LEXIS 12816, at *13-14, 2011 WL 587587 (E.D. Cal. Feb. 9, 2011)

21   (dismissing a plaintiff's elder abuse claim because she was not 65 when alleged violation

22   occurred).

23         Clifton argues this claim must be dismissed because it consists only of the elements of a §

24   15610.30 claim along with conclusory statements.  The court disagrees with Clifton, however,

25   because Plaintiff incorporates the Complaint's preceding allegations into this claim which, taken

26   together, could certainly encompass conduct prohibited by § 15610.30.

27
                                          18
28   Case No.: 5:13-cv-03055-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
     DISMISS

*United States District Court*
*Northern District of California*

1    However, the court finds that Plaintiff must reveal her exact birthdate in order to state a

2    plausible elder abuse claim under these circumstances.  Plaintiff only alleges that in 2011 she

3    "resided in California and was 65 years old."  With the notable absence of an earlier year from the

4    sentence, it is reasonably inferred that Plaintiff actually reached the age of 65 in 2011, but was not

5    age 65 in earlier years.  As such, simply parroting the statutory language from § 15610.27 is not

6    enough for this case.  Since all of the fraudulent conduct attributed to Rode and Clifton also

7    concluded in 2011 - the same year Plaintiff turned 65 - the legal viability of Plaintiff's claim

8    seems to turn on the exact date upon which she qualified for protection under § 15610.30.  And

9    because her birthdate is a fact easily supplied by Plaintiff without the need for the claim to proceed

10   to discovery, the court will require Plaintiff to allege it in any amendment to this claim.

11          Accordingly, the elder abuse claim will be dismissed with leave to amend.

12       **G.    Damages**

13       Clifton challenges Plaintiff's damages allegations with arguments to which Plaintiff does

14   not directly respond.  Clifton first argues that, for the fraud claims at least, she has not identified

15   damages with particularity.  Plaintiff must do so for any damages she claims resulted from fraud,

16   especially because her Complaint contains other, non-fraud claims as well.  Wayne Merritt Motor

17   Co. v. N.H. Ins. Co., No. 11-CV-01762-LHK, 2011 U.S. Dist. LEXIS 122320, at *36-37, 2011

18   WL 5025142 (N.D. Cal. Oct. 21, 2011).

19          Similarly, Plaintiff must provide more factual detail in support of her request for punitive

20   damages if she chooses to seek them against Clifton.  Punitive damages are only awarded "where

21   it is proven by clear and convincing evidence that the defendant has been guilty of oppression,

22   fraud, or malice."  Cal Civ. Code. § 3294(a).  Although Clifton may be deemed liable for Rode's

23   misconduct as a result of the partnership to which he belonged, liability for punitive damages is

24   not similarly imputed under California law.  See Cruz v. HomeBase, 83 Cal. App. 4th 160, 163

25   (2000) ("A corporation is not deemed to ratify misconduct, and thus become liable for punitive

26   damages, unless its officer, director, or managing agent actually knew about the misconduct and

27                                                    19

28   Case No.: 5:13-cv-03055-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
     DISMISS

United States District Court
Northern District of California

1    its malicious character.").

2    **IV.    ORDER**

3    Based on the foregoing, Clifton's Motion to Dismiss is GRANTED IN PART and

4    DENIED IN PART.  It is DENIED as the first claim for Professional Negligence.  It is

5    GRANTED as to all other claims and damages allegations asserted in the Complaint, which are

6    DISMISSED WITH LEAVE TO AMEND.

7    Any amended complaint must be filed on or before March 7, 2016.

8

9    **IT IS SO ORDERED.**

10    Dated:  February 22, 2016

11    

12    EDWARD J. DAVILA
     United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
     20

     Case No.: 5:13-cv-03055-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
     DISMISS

United States District Court
Northern District of California